**In the Matter of R. S. PINELLAS MOTEL PARTNERSHIP, dba Ramada Inn South, Debtor.**

**R. S. PINELLAS MOTEL PARTNER- SHIP, dba Ramada Inn South, Plaintiff,**

**v.**

**RAMADA INNS, INC., Defendant.**

**Bankruptcy No. 79–1545 C.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Dec. 28, 1979.

Don M. Stichter, Stichter, Stagg, Hoyt, Riedel & Fogarty, Tampa, Fla., for plaintiff.

Allan C. Watkins, Straske, Farfante & Watkins, Tampa, Fla., for defendant.

In Proceedings for an Arrangement
Under Chapter 11

ALEXANDER L. PASKAY, Bankruptcy Judge.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THIS IS a business reorganization case filed by R. S. Pinellas Motel Partnership (the Debtor) who seeks relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. 1101 et seq. The matter under consideration is an application for temporary restraining order sought by the Debtor pending the resolution of its claim for an injunction against Ramada Inns, Inc., the Defendant named in this adversary proceeding (Licensor). Due to the emergency nature of the relief sought, the matter was set down for hearing on short notice. At said hearing, the Court heard testimony of witnesses, received documentary evidence and having considered the entire record now finds and concludes as follows:

The Debtor-Licensee is the owner and operator of a motor hotel facility located in St. Petersburg, Florida. The facility which opened for business in 1971 contains 177 guest rooms, together with a restaurant and a cocktail lounge and banquet facilities and other facilities such as a swimming pool. The facility is operated as Ramada Inn pursuant to a License Agreement entered into on the 31st of December, 1969 by Ramada Inns, Inc. (Licensor) and the Debtor (Licensee). Pursuant to the terms of the Agreement, the Licensee is entitled to all benefits offered by the Licensor, such as national advertising, use of the distinctive sign (logo), use of the system's central computerized nationwide and international reservation system; and access to a toll free number where the public may make advance reservations in all facilities operated as part of the Ramada System. In addition, the Licensee has the benefit of the good will and the favorable name recognition established by the Ramada System. The Licensee under the agreement is required, in addition, to pay a royalty to the Licensor, and to maintain the facility in conformity with the standard of the quality established by the Licensor. In order to assure a compliance with this provision of the License Agreement, the Licensor conducts periodic on site inspections of the premises of its Licensees. The Agreement authorizes the Licensor to cancel and terminate the License Agreement if the Licensee fails to maintain the premises in conformity with

the standard of operation set forth in detail in the License Agreement. The License Agreement further provides that in the event the Licensee shall violate any terms, provisions covenants of the License Agreement and such violation continues for a period of 30 days after a written notice from the Licensor, the Licensor may at its option, immediately declare the License Agreement cancelled and terminated.

The License Agreement further provides that whenever under the Agreement a notice is required, the same shall be in writing and any notice so mailed shall, for all purposes, be deemed to have been given to and received by the party for whom the notice was intended 48 hours from the date said notice was mailed. The record further reveals that the Debtor prior to August, 1979 was delinquent in its royalty payment obligations under the License Agreement and it was indebted to the Licensor in the amount of $57,212.68. It further appears that in August, 1979, the Debtor negotiated for and obtained a loan from Florida Federal Savings and Loan (Savings & Loan). As part of this transaction, the Licensor assured the Lender that if the delinquency is cured, and all past due royalty payments are made and brought current, it will consider the License Agreement to be in good standing, in full force and effect and all previous monetary defaults will be disregarded and forgiven. There is no dispute that the Debtor satisfied the outstanding obligation mentioned above and paid to the Licensor all past due sums under the License Agreement.

It is further without dispute that the periodic inspection conducted by the Licensor found the Licensee to be in violation in several respects of the standard of operations set forth in the License Agreement (Pl's Exh. # 1—Clause 3a) and these violations continued to exist at least for a year. (Def's Exh. ## 1, 2, 3, and 4). These violations are recognized and admitted by the Debtor itself as it appears from an internal inspection report prepared by an employee of the Debtor (Def's Exh. # 6). The last inspection conducted by the Licensor was on October 30, 1979 and indicated that while

the restaurant operation lived up to the standard of operation, the hotel operation did not. The Debtor concedes that substantial deficiencies exists but claims that they could be cured within 60 days at an expenditure of $120,000. There is no evidence in this record that the Debtor has sufficient funds at this time to cure these deficiencies or that it will have sufficient funds in the near future to correct these deficiencies. According to the Debtor, it is not renting now the 50 rooms which are currently substandard and the rooms which are rented do meet the standard of operation required by the Licensor.

The record further reveals that on October 13, 1979, the Licensor mailed through certified mail, "Return Receipt Requested", a Final Termination Notice to the Debtor from Phoenix, Arizona where the headquarters of its System is located (Pl's Exh. # 2). The notice stated that the License Agreement is cancelled and terminated due to the Debtor's failure to maintain the quality standards required by the Licensor. The notice also informed the Debtor that the Licensor issued the necessary instructions to have the Debtor's facility disassociated from the Ramada System; to remove the listing of the Debtor's facility from the Directory issued by the Licensor and from the Ramada Reservation System; and that it notified all credit card companies of the termination of the License Agreement and that it intends to cause a removal of the neon signs bearing the registered name and the logo of the Licensor. On the same date when this Final Termination Notice was mailed from Phoenix, the Debtor filed its petition for an Order for Relief under Chapter 11 of the Code; U.S.C. 1101 et seq. The petition was filed at 1:45 p. m. and there is no doubt that while the final termination notice may have been mailed prior to the filing of the Debtor's petition, it is without dispute that the same was not received by the Debtor until after the commencement of the reorganization proceeding. The record further reveals that the Licensor did immediately refuse to honor any reservation attempts by prospective guests through

its central reservation systems and prohibited any further use of the computer and its toll free number, both of which are essential to the use of the central reservation system which provided in the past 70% of the total business of the Debtor. The evidence further reveals that as the result of the loss of the use of the central reservation system of the Licensor, the Debtor has already received several cancellations and its business is heading for a serious downturn on the eve of its prime season which, of course, provides the lifeblood of the motor hotel business in Florida.

It further appears that as the result of the Termination Notice, the credit card companies increased their service charges to the Debtor from 2% to 4% placing an additional financial burden on the Debtor. It further appears from the record that as the result of the Termination Notice, the Savings & Loan filed a complaint and now seeks a modification of the automatic stay imposed by § 362 of the Code; 11 U.S.C. § 362 in order to institute a foreclosure proceeding because it considers the loss of the Ramada Inn franchise a significant impairment of the value of its collateral.

These are the facts germane to the matter under consideration which is the basis for the preliminary relief sought by the Debtor, who seeks to preserve the status quo through an order directing the Licensor to maintain the availability of its Reservation System and to furnish to the Debtor, pending final determination of this controversy, all the other services which are otherwise available under the License Agreement to Licensees of the Ramada System.

In support of its claim for relief, the Debtor contends, first, that the final termination notice did not become effective until it was received and since it was admittedly received after the institution of the reorganization proceeding, the automatic stay of the Code, Sec. 362; and 11 U.S.C. § 362 prevented termination without leave of court and since none was sought and obtained by the Licensor, the termination notice has no legal force or effect. In addition, it is the contention of the Debtor that

unless this Court grants the preliminary injunctive relief sought, it will suffer irreparable harm and its chances to obtain rehabilitation under the provision of Chapter 11 will be destroyed. The Debtor further urges that if the injunction is issued, the detriment to the Licensor is nominal and in any event the Licensor is estopped to assert the claimed defaults by virtue of its admission in August that if the delinquent payments are made it considers the License Agreement in good standing and in full force and effect, and since the payments were made, it is now bound by this admission and is estopped to claim defaults.

In response, to these contentions, the Licensor responds that the Final Termination Notice was mailed prior to the institution of the reorganization proceeding; it became effective upon mailing, thus, the automatic stay of the Code, Sec. 362; 11 U.S.C. § 362, had no effect on the validity of the notice of termination. This being the case, so contends the Licensor, the License Agreement was cancelled and terminated by the time the Debtor filed its petition for relief and under the holding of the Fifth Circuit Court of Appeals, in *Schokbeton Industries Inc. v. Schokbeton Products Corp.*, 466 F.2d 171 (1972), since the rights under a License Agreement were terminated prior to the commencement of the reorganization case, they can no longer be resuscitated by the institution of the reorganization proceeding. In that case the Court, speaking through Chief Judge Brown stated that contractual termination provisions are unaffected by filing of a petition in bankruptcy or a petition for arrangement and may be enforced against the trustee or a debtor in possession. The Court concluded that since the Debtor's rights under the licensing agreement evaporated *upon the receipt of the written notice of termination* (emphasis supplied), neither the mere filing of the petition for arrangement nor the referee's order purporting to extend the grace period for curing the default nor a "mystical combination of both could effect their recondensation". Thus, it is apparent from the foregoing that the effective date of the cancellation is crucial and represents a

threshold question to the resolution of this controversy. This is so because, if the Termination Notice became effective upon mailing, *Schokbeton, supra* would control. On the other hand, if it became effective only upon receipt, *Schokbeton, supra* is inapposite and distinguishable. This is so because the holding of *Schokbeton, supra* was based on the undisputed fact that at the time the Debtor sought the injunctive relief against cancellation of the Franchise Agreement, the agreement was already effectively cancelled and the grace period expired and there was nothing left to be preserved since all rights under the franchise agreement evaporated.

■ In the case under consideration, the notice of cancellation and termination of the License Agreement did not become effective until it was received, that is, after the institution of the reorganization proceeding. This is so because the Court in *Schokbeton, supra* itself concluded that the rights of the Debtor under the license agreement evaporated upon *receipt of the written notice of termination* (emphasis supplied) and not upon the mailing of the notice. However, one need not rely on *Schokbeton, supra* to accept this conclusion because the effectiveness of the notice of cancellation is determined by the specific terms of the contract itself. *Auvil v. Nationwide Mutual Fire Insurance Company*, 222 So.2d 46 (Fla.App.1969), and the License Agreement involved in this controversy specifically provides in clause 9 that "any notice . . . shall for all purposes, be deemed to have been given to and received by the party for whom intended 48 hours from the date said notice was mailed". Thus, it is clear that the cancellation was not effective until the Termination Notice was received by the Debtor. *Aetna Ins. Co. v. Settembrino*, 324 So.2d 113 (Fla.App. 1975). This is supported by the undisputed fact that the Termination Notice mailed on October 31, 1979 was not received by the Debtor until November 2, 1979 or two days after the commencement of the reorganization proceeding.

This leaves for consideration the next question, i. e. the impact of the automatic stay provision of the Code, Sec. 362; 11 U.S.C. § 362, on the validity and effectiveness of the Notice of Termination.

Sec. 362, 11 U.S.C. § 362 provides in pertinent part as follows:

(a) . . . a petition filed under § 301, 302 or 303 of this title operates as a stay, applicable to all entities, of—

(1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

■ The automatic stay is one of the most fundamental debtor protection devises provided by the Code. There is no doubt that the scope of the protection is broad and was designed to reach all proceedings, including license revocations, arbitrations, administrative and judicial proceedings and

its operation is no longer limited to civil action, but includes proceedings even if they are not before governmental tribunals. H.Rep.No.95–595, 95th Congr.1st Sess. (1977) 340–2; S.Rep.No.95–989, 95th Congr.2d Sess. (1978) 49–51, U.S.Code Cong. & Admin.News 1978, p. 5787. It should be noted at the outset that an attempt to cancel the License Agreement is neither the commencement nor the continuation of a judicial, administrative proceeding against the debtor. It is equally clear that the attempted action by the Licensor is not an "employment of process" or an "attempt to enforce a judgment", "an attempt to create, perfect or to enforce a lien against property of the estate", actions expressly stayed by Sec. 362(1)(2)(4)(5); 11 U.S.C. § 362 (1)(2)(4)(5). Neither is it an attempt to cancel the License Agreement an act to collect a debt, recover a claim, exercise the right of set-off or to commence or continue a proceeding before the U.S. Tax Court, all of which are obviously within the reach of the automatic stay of the Code. Sec. 362(6)(7)(8); 11 U.S.C. § 362(6)(7)(8).

█ Thus, unless the attempt to cancel the License Agreement falls within the reach of the terms "or other proceedings" used in subclause (1) or within subclause (3) of the automatic stay, Sec. 362(a) of the Code, it furnishes no assistance or support to the debtor. The term "or other proceedings" when read in conjunction with the type of proceeding specifically enumerated in subclause (a)(1) leaves no doubt that it does refer only to proceedings before quasi governmental units, such as administrative agencies or licensing boards, created to police certain professions, i. e. contractors, barbers, attorneys, doctors and the like. While this Court is not unmindful that the legislative history might call for a different conclusion, H.Rep.No.95–595, 95th Congr.1st Sess. (1977) 340–2, S.Rep.No.95–989, 95th Congr.2nd Sess. (1978) 49–51, U.S. Code Cong. & Admin.News 1978, p. 5787, supra, this Court is of the opinion that the attempt to cancel the License Agreement by the Licensor is not the type of "proceeding" which was intended by Congress to be stayed by the filing of a petition for order for relief under the Code.

█ The only remaining provision of the Sec. 362 of the Code; 11 U.S.C. § 362 which may assist the debtor is subclause (a)(3) which stays any acts instituted for the purpose of obtaining "possession of property of the estate or of property from the estate." This subclause was designed to prevent dismemberment of the estate. Intangible property rights, e. g. rights acquired under a license agreement are properties of the estate and are capable of possession; see *Schokbeton, supra.* Thus, an attempt to cancel such rights, after the commencement of the case may come within the protective provisions of the Code under subclause (a)(3) of Sec. 362; 11 U.S.C. § 362. This is so because the cancellation of the License Agreement may be deemed to be an attempt to obtain possession of "property" of the estate.

This Court is well aware of a recent decision of the District Court of this District entered in a pre-Code arrangement proceeding wherein the District Court on appeal held that the intervention of an arrangement proceeding has no impact on the right of a bonding company to cancel a payment or performance bond issued to cover a potential liability of the debtor to a third party. The controlling force of this decision on controversy sub judice evaporates at once when one considers the reach of the automatic stay of the Code controlling this controversy. It is clear from the legislative history of § 362 that Congress intended the automatic protection to be afforded by the automatic stay to be far reaching and to eliminate the previously existing limited perimeters of the pre-Code automatic stay. This conclusion is further supported by an overriding policy aim of Chapter 11 of the Code which is to provide the broadest protection to debtors in general. For instance, Sec. 525; 11 U.S.C. § 525 provides a very broad protection for discharged debtors against discriminatory treatment; a protection which was not available prior to the adoption of the Code.

Having concluded that the notice of termination of the License Agreement did not

become effective until after the commencement of the reorganization case; this Court is satisfied that the Notice of Termination was an act designed to obtain possession of "property" from the estate, an act within the reach of the automatic stay of the Code, Sec. 362(1)(3); 11 U.S.C. § 362(1)(3), and that it has no force and effect, since it was not authorized by the Court.

However, even assuming that this conclusion is an overly broad application of the automatic stay, there is an additional reason why this debtor is entitled to the temporary relief it seeks under the overall equity power granted by the Code. Sec. 105 of the Bankruptcy Code, 11 U.S.C. § 105 provides that the bankruptcy court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title". This section is derived from Sec. 2a(15) of the Bankruptcy Act of 1898. Sec. 105 is similar in effect to the All Writs Statute, 28 U.S.C. § 1651, under which the new bankruptcy courts are brought by an amendment to 28 U.S.C. § 451, *P.Law 95–598.*

The License Agreement involved in this controversy is without a doubt an executory contract. The Code expressly authorizes the Debtor to assume or reject executory contracts, Sec. 365 of the Code; 11 U.S.C. § 365, and permits a debtor to assume an executory contract even if the contract is in default at the time of the commencement of the case under certain conditions; Sec. 365b(1)(A)(B)(C); 11 U.S.C. § 365b(1)(A)(B)(C). These sections provide several alternative methods to cure defaults compliance with one of which is a condition precedent to the assumption of an executory contract which is in default.

The evidence presented established, without the shadow of a doubt, that the rights and benefits flowing from the License Agreement in favor of the debtor are extremely valuable, and as a fact of the matter, well-nigh indispensable to the economic survival of the debtor and its chances to obtain rehabilitation under the Code will be destroyed if the License to operate its facilities as a Ramada Inn is lost. Thus, even if this right is not protected by the automatic stay of the Code, this Court certainly has the power under Sec. 105; 11 U.S.C. § 105 to "issue the necessary and appropriate order" to protect these valuable property rights at least temporarily. In addition while there are, no doubt, deficiencies in the current operation of the hotel, the Debtor should be given an opportunity to cure the defects by providing adequate protection to the Licensor pursuant to Sec. 361; 11 U.S.C. § 361. In addition, this record is not sufficient to permit the conclusion that the harm inflicted upon the Licensor if the injunction is issued is sufficiently significant as to tip the balance of hurt in its favor.

■ The requirement that any injunction should be supported by the public interest previously mentioned by courts, *Canal Authority v. Calloway,* 489 F.2d 567 (5th Cir. 1974), as a pre-requisite for injunctive relief is applicable only to a debtor who performs quasi governmental services or services which widely affect the interest of the public, i. e. utility companies, transportation companies, etc., and not services rendered by private individuals to the public at large.

This does not mean, of course, that the Licensor is helpless and is at the mercy of the debtor indefinitely. On the contrary, the licensor may move forthwith to seek relief from the automatic stay pursuant to Sec. 362(a)(1); 11 U.S.C. § 362(a)(1) or may seek an order to compel the debtor to assume this executory contract on or before the time fixed by the Court and, of course, compel before the debtor is permitted to assume his contract to comply with the requirements of the Code, Sec. 365b(1)(A)(B)(C); 11 U.S.C. § 365b(1)(A)(B)(C), and cure all defaults as they relate to the standard of operation required by the License Agreement.

In sum, this Court is satisfied that the plaintiff's claim for relief is well-founded and for the reasons stated, should be granted.

A separate order granting a preliminary injunction in accordance with the foregoing has been previously entered.