**In re MONROE COUNTY HOUSING CORPORATION, INC., a corporation not-for-profit, Debtor.**

**MONROE COUNTY HOUSING CORPORATION, INC., a Florida corporation not-for-profit, Debtor-in-Possession, Plaintiff,**

**v.**

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF the FLORIDA KEYS, a United States corporation, Defendants.**

**Bankruptcy No. 81–01091–BKC–SMW. Adv. Nos. 81–0611–BKC–SMW–A, 81–0379–BKC–SMW–A.**

United States Bankruptcy Court, S. D. Florida.

Jan. 8, 1982.

Joel M. Aresty, Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, Fla., for debtor-in-possession.

Louis Phillips, Phillips & Phillips, P. A., Bernard Jacobson, Fine, Jacobson, Block, Klein, Colan & Simon, P. A., Miami, Fla., for First Federal Sav. and Loan Ass'n of the Florida Keys.

Harley E. Riedel, Stichter & Riedel, P. A., John R. Lawson, Jr., Lawson & McWhirter, Tampa, Fla., for Cafco Engineers, Inc. and Indemnitors, Elec. Machinery, et al.

John M. Spottswood, Jr., Key West, Fla., for Monroe County Housing Corp., Inc.

Michael L. Brodsky, Miami, Fla., for Climatrol Sales.

Marsha Rydberg, Taub & Williams, Tampa, Fla., for Tomasino & Associates, Inc.

Robert E. Venney, R. Earl Welbaum, Welbaum, Zook, Jones & Williams, Miami, Fla., for The Ohio Cas. Ins. Co.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO COMPLAINT NUMBER 81–0611–BKC–SMW–A (EXCLUDING COUNTS III AND IV) AND COMPLAINT NUMBER 81–0379–BKC–SMW–A (COUNT II OF THE OHIO CASUALTY INSURANCE COMPANY'S COUNTERCLAIM)

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come before the Court upon a Complaint filed by the Debtor-in-Possession, Number 81–0611–BKC–SMW–A, excluding Counts III and IV which have been severed for later determination, against the First Federal Savings and Loan Association of the Florida Keys (herein First Federal) and Count II of The Ohio Casualty Insurance Company's (herein Ohio) Counterclaim in Adversary Proceeding Number 81–0379–BKC–SMW–A, with said cases having been consolidated for purposes of trial by an Order dated November 16, 1981, in adversary proceeding number 81–0611–BKC–SMW–A, and the Court having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel and being otherwise fully advised in the premises does hereby make the following findings of fact and conclusions of law:

1. This Court has jurisdiction of the parties hereto and the subject matter hereof, pursuant to Title 28 § 1471 of the United States Code.

### FINDINGS OF FACT

2. The Plaintiff, Monroe County Housing Corporation, Inc. (Debtor-in-Possession),

is a Florida corporation not-for-profit, and is the owner of a real estate project consisting of approximately 16.74 acres of real property and 130 units of low income housing located in Marathon, Florida.

3. The Defendant, First Federal, is a United States corporation, and is the construction lender for the project.

4. The Counterclaimant, The Ohio Casualty Insurance Company, is an Ohio corporation and is the Performance and Payment Bond Surety for the project.

5. All housing units of the project have qualified for, and will be the recipient of rental assistance payments under Section 8 of the United States Housing Act of 1937.

6. Financing for the project has been provided through construction and permanent loans made by First Federal and other participant lenders. This financing consists of a $4,725,000 thirty year loan at 7¼% per annum interest (tax free) and a $650,000 twenty-eight year and nine month loan at 10½% per annum interest (also tax free).

7. First Federal is holding approximately $265,896.79 in undisbursed funds from the subject loans in a construction loan account.

8. First Federal and the Debtor entered into a construction loan agreement of even date with the $4,725,000 mortgage, which was incorporated into later modifications, and which provided in paragraph 2 thereof, as to the construction loan proceeds, in material part, as follows:

2. Funds represented by the aforesaid mortgage indebtedness shall be disbursed by the mortgagee at the times and under the terms and conditions following:

(a) Subject to the provisions hereof, such funds shall be disbursed or advanced from time to time as construction of the improvements has progressed as follows:

\* \* \* \* \* \*

3. The balance of the net loan proceeds shall be payable upon full completion of the project and subject to final inspection approval by the mortgagees, and final acceptance and approval by HUD.

(b) All monies disbursed hereunder shall be used solely on account of construction costs for the improvements on the hereinabove described property and expenses of the construction loan and no such monies shall be diverted or borrowed for use on any other project.

9. Both the Debtor and First Federal are obligees under the Performance and Payment Bond issued in connection with the project by The Ohio Casualty Insurance Company, the Surety.

10. Pursuant to an alleged default of the contractor during the construction, the Surety undertook to complete the construction of the housing project in accordance with the provisions of the Performance and Payment Bond.

11. At no time material hereto did First Federal indicate that the balance of the construction loan account would not be available for the costs of completion of the project and did in fact give verbal and written assurance to both the Surety and the Debtor that funds remained in the construction loan account to pay the costs of completion of the project.

12. First Federal made affirmative representations to the Surety, both prior and subsequent to the surety's undertaking to complete the project, that sufficient funds existed in the construction loan account to complete the project.

13. The Surety relied upon the existence of construction loan funds and has expended in excess of $299,000 in costs of completion beyond payment received from the lender or owner.

14. At no time material hereto did First Federal ever notify the Debtor or the Surety of an acceleration or maturity of the obligations but did, after the asserted maturity dates, in fact, continue disbursing interest to itself, continued paying other costs of the project to other parties and made construction draw payments to the Surety from the construction loan account.

15. It is uncontroverted that the project is complete subject to a minor punch list;

the certificates of occupancy have been issued and the project is occupied.

16. It is uncontroverted that the appraisal value of the project far exceeds the total amount of the construction loans.

17. No evidence was presented by First Federal to give any subcontractor, laborer or materialman any right to file a lien upon the subject property or make any claim against the undisbursed funds in the construction loan account.

18. The $265,896.79 balance in the construction loan account constitutes property of not inconsequential value to the estate of the Debtor.

19. The Debtor has cured the incident of default in the mortgages and notes triggering the alleged maturities by tendering to First Federal the executed HUD Housing Assistance Payment Contract (HAP), effective October 6, 1981 and has demonstrated the ability to pay all past due mortgage payments under its plan. The notes provide for amortizing payments of both principal and interest to begin the month after execution of the HAP Agreement.

## CONCLUSIONS OF LAW

On the bases of the foregoing facts the Court makes the following conclusions of law:

### AS TO THE OHIO CASUALTY INSURANCE COMPANY:

20. First Federal asserted that there exists no construction loan funds because of the maturity dates of the notes and mortgages dated February 25, 1981 and April 1, 1981 and further urged that the Surety was not entitled to rely upon the representations which it made as construction lender concerning the availability of funds. The cases relied upon by First Federal do not involve a Surety relationship, as here, where the construction lender is a named obligee and further do not involve loans upon which there remains undisbursed construction loan funds. The authorities relied upon by First Federal are distinguishable.

21. The doctrine is well established that a Surety having made good under its contract of suretyship has an equitable right of subrogation against any sums remaining in the hands of a person for whose protection the contract of suretyship was given. *Pearlman v. Reliance Ins. Company*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); *Henningsen v. United States Fidelity & Guaranty Company*, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 549 (1908); *Prairie State Nat. Bank v. United States*, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896); *Trinity Universal Insurance Company v. United States*, 382 F.2d 317 (5th Cir. 1967); *Midtown Bank of Miami v. Travelers Indemnity Company*, 366 F.2d 459 (5th Cir. 1966); and *McAtee v. United States Fidelity & Guaranty Company*, 401 F.Supp. 11 (N.D.Fla.1975).

22. First Federal has received and enjoys the benefits of the security anticipated by the construction loan and to allow First Federal to hold the funds and continue to retain the full security anticipated by the construction loans is unequitable and would effectively afford to the Bank an unjust enrichment. Upon analogous facts, Florida Courts have held that a Contractor is entitled to an equitable lien against the undisbursed construction loan proceeds. The Surety is entitled to all of the rights of its Principal and Contractor and therefore is entitled to the funds remaining in the hands of First Federal against the claim of the Bank to retain those funds. *See, Blossam Cont., Inc. v. Republic Mortg. Inv.*, 353 So.2d 1225 (Fla. 2d DCA 1977) and *Morgen-Oswood & Assoc., Inc. v. Continental Mortgage Investors*, 323 So.2d 684 (Fla. 4th DCA 1975).

23. Although not necessary to the conclusion herein reached, First Federal is estopped to rely upon the maturity dates since its conduct in assuring the Surety of the existence of funds and continuing to fund the construction constitutes action which affirmatively misled the Surety to induce it to continue to work and complete the project at substantial unreimbursed costs. Cf., *J. G. Plumbing Service, Inc. v. Coastal Mortgage Co.*, 329 So.2d 393 (Fla. 2d DCA 1976).

AS TO THE DEBTOR–IN–POSSESSION:

24. First Federal has benefited substantially from the increase in the value of its security resulting from the expenditure of the construction loan funds. First Federal would be unjustly enriched if it were permitted to enjoy the benefits of both the $265,896.79 fund and the increase in value of its security resulting from the labor of the Debtor in completion of the project.

■ 25. The actions of First Federal in continuing to disburse funds in accordance with the executory mortgages and in representing to the Debtor that the balance in the construction loan account would be available for completion of the project induced the Debtor to continue to work toward completion of the project. It would therefore be inequitable to deprive the Debtor of the use of the funds in the construction loan account for payment of costs of completion.

26. Section 105 of the Bankruptcy Code provides that the Bankruptcy Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of Title 11 of the United States Code.

27. Section 105 is a broadly phrased provision intended to form the basis for an extensive exercise of judicial power during the course of administration of a case under Title 11. See *In the Matter of R. S. Pinellas Motel Partnership v. Ramada Inns, Inc.*, 2 B.R. 113, 1 C.B.C.2d 349 (M.D.Fla.Bkrtcy. 1979); *Matter of Aurora Cord and Cable Co.*, 2 B.R. 342, 1 C.B.C.2d 486, 491 (N.D.Ill. Bkrtcy.1980).

■ 28. A turnover of the $265,896.79 pursuant to Section 542 of the Bankruptcy Code under the authority of Section 105 is particularly appropriate in this case, since the use of the balance of the funds in the construction loan account was intended by all parties, at all material times, to be used in connection with the completion of the project.

AS TO BOTH DEBTOR–IN–POSSESSION AND SURETY:

■ 29. Based on the testimony and evidence as reflected by the foregoing Findings of Fact, the acts and conduct of First Federal precludes the asserted effect of the maturity of the mortgages and notes as claims by First Federal.

30. This Court reserves ruling on the Debtor-in-Possession's request that First Federal be declared unimpaired under its plan, although the Court recognizes that even though First Federal may have had accelerated or matured mortgages prior to the filing of the Chapter 11 petition, the Bankruptcy Code authorizes deacceleration if defaults are cured and maturities reinstated pursuant to § 1124(2).

31. The Court need not determine here whether First Federal had accelerated or matured mortgages by reason of the fact that § 1124(2) would authorize reinstatement of the obligations since the only defaults demonstrated such as the lack of execution of the HUD Housing Assistance Payment Agreement have been cured already and since the payment of all past due payments has been provided for in the Debtor's plan of reorganization.

32. The uncontroverted evidence indicates that reinstatement of the maturity of First Federal's mortgages in accordance with the Bankruptcy Code would not otherwise damage or otherwise alter First Federal's contractual rights, and that Congress intended mortgage maturities to be reinstated in situations such as the one presently before the Court in § 1124(2).

33. First Federal's claim was filed in an accelerated or matured amount and that claim is disallowed in favor of a claim for all payments actually unpaid under the mortgages, which claim is allowed.

34. The Debtor-in-Possession's objections to certain interest payments and objection to the claim regarding participant lenders contained in the Complaint were not relied on by the Debtor-in-Possession at the trial and need not be the subject of any decision here.

35. The Debtor-in-Possession must arrange to pay all past due interest payments under First Federal's mortgage and must pay amortizing payments of both principal and interest beginning November 1, 1981 and all subsequent months.

36. These Findings of Fact and Conclusions of Law and the Partial Final Judgment of even date address themselves only to Complaint Number 81–0611–BKC–SMW–A, excluding Counts III and IV, and Complaint Number 81–0379–BKC–SMW–A only as to Count II of The Ohio Casualty Insurance Company's Counterclaim.

37. These Findings of Fact and Conclusions of Law and the Partial Final Judgment as to the remaining portions of the Complaints do not decide the issue of whether the Debtor-in-Possession or The Ohio Casualty Insurance Company is entitled to the $265,896.79 balance in the construction loan account. The Court reserves ruling upon that question, pending resolution in a separate adversary proceeding and the main proceeding.

A judgment will be entered in accordance with these findings and conclusions.

PARTIAL FINAL JUDGMENT AS TO COMPLAINT NUMBER 81–0611–BKC–SMW–A (EXCLUDING COUNTS III AND IV) AND COMPLAINT NUMBER 81–0379–BKC–SMW–A (COUNT II OF THE OHIO CASUALTY INSURANCE COMPANY'S COUNTERCLAIM)

In conformity with the Findings of Fact and Conclusions of Law of even date, in Case Number 81–0611–BKC–SMW–A, excluding Counts III and IV which have been severed for later determination, against First Federal Savings and Loan Association of the Florida Keys and Count II of The Ohio Casualty Insurance Company's Counterclaim in Adversary Proceeding Number 81–0379–BKC–SMW–A, it is:

ORDERED, ADJUDGED AND DECREED:

1. That First Federal Savings and Loan Association of the Florida Keys turn over to the Debtor-in-Possession the sum of $265,-896.79, with said sum representing the balance of funds in the construction loan account, to be held in escrow in an interest bearing account pending further Order of this Court.

2. First Federal Savings and Loan Association of the Florida Keys' claim in its accelerated or matured amount is disallowed and the Debtor-in-Possession shall pay all past due interest payments and amortizing payments of both principal and interest beginning November 1, 1981 and all subsequent months.

3. The Debtor-in-Possession's Counterclaim Counts III and IV will be considered in separate final judgments.