In the Matter of McLOUTH STEEL COR-
PORATION, New Boston Coke Corpora-
tion, Ironton Coke Corporation, Debt-
ors.

EDWIN C. LEVY CO., INC., a Michigan
corporation, Plaintiff,

v.

McLOUTH STEEL CORPORATION,
Defendant.

Bankruptcy No. 81–07001–W.

Adv. No. 82–0095–W.

United States Bankruptcy Court,
E. D. Michigan, S. D.

March 1, 1982.

Asher Rabinowitz, Detroit, Mich., for Edwin C. Levy Co., Inc.

C. Beth DunCombe, Detroit, Mich., for McLouth Steel Corp.

## MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

This matter comes before the Court upon the motion by Edw. C. Levy Co., Inc. (herein Levy), for an order determining or allowing the termination of an executory contract and the lifting of the automatic stay or, in the alternative, to compel McLouth Steel Corporation (herein McLouth) immediately to assume or reject an executory contract under § 365 of the Bankruptcy Code.

McLouth is engaged in the manufacture and sale of carbon and stainless steel flat rolled products. On July 1, 1979, Levy and McLouth entered into an agreement (Slag Agreement) whereby Levy agreed to continue to provide certain essential steel manufacturing services to McLouth, including the removal and reclamation of metalics from blast furnaces and steel slag and the providing of equipment to haul slag pots. The original Slag Agreement between the parties was entered into on February 19, 1954. The parties agree that the services provided by Levy are essential for the continued operation of McLouth's business.

The Slag Agreement provides for the payment of sums from McLouth to Levy of approximately $10,000.00 per day. In event of default by either party, the contract provides:

### DEFAULT PROCEDURES:

"P. If either party shall default in the performance of any of its obligations hereunder (other than as provided in paragraph V–M hereof) and such default shall continue for a period of one month after written notice by the other party, the party giving notice may terminate this agreement by giving one (1) month prior written notice to the defaulting party. Such termination shall not relieve either party from any liability hereunder which accrues prior to such termination."

As of December 2, 1981, McLouth owed Levy $1,522,189.05. On that date, Levy claims to have mailed McLouth a notice of default. On December 8, 1981, McLouth filed a petition for reorganization under Chapter 11 of the Bankruptcy Code and has continued as debtor in possession under § 1108. McLouth has been making full current payments to Levy under the terms of the contract since the commencement of these proceedings.

McLouth opposes the application claiming that the agreement has not terminated by its own provisions; the automatic stay provisions of § 362 prevent Levy from terminating. Additionally, McLouth asserts that it is entitled to and requires a reasonable time in deciding whether to assume or reject the contract; and, therefore, the application by Levy is premature. The parties concede that the Slag Agreement is an executory contract.

## I.

### THE ISSUE OF THE APPLICABILITY OF SECTION 108(b) OF SECTION 365

Levy contends that § 108(b) is applicable. That section reads as follows:

"(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) 60 days after the order for relief."

Levy's position is that under § 108(b), McLouth was required to cure within sixty

days of the order for relief (that is: by February 8, 1982) and since it did not, the time for cure has elapsed; McLouth no longer has right to assume or reject the agreement; Levy, therefore, is entitled to have the automatic stay lifted and the contract terminated.

McLouth asserts that § 365 allows the debtor a substantial amount of time in deciding whether to assume or reject an executory contract.

Section 365, in pertinent part, provides:

"(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

"(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

"(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

"(C) provides adequate assurance of future performance under such contract or lease."

\*     \*     \*     \*     \*     \*

"(d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

"(2) In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."

Section 365 contains comprehensive instructions for the treatment of executory contracts. Levy cites *Bank of the Commonwealth v. Bevan, et al.*, 13 B.R. 989, 7 B.C.D. 557 (D.C.Cir., 1981), for the proposition that § 108 controls the running of specific time periods and is, therefore, applicable herein. However, it is appropriate to observe that *Bevan* addressed the issue of extension of a redemption period not the issue of the curing of defaults or the assumption or rejection of executory contracts.

The case law is abundant in the area concerning the rejection or assumption of executory contracts. In substantially all of the cases that this Court has reviewed, § 365 was applied to resolve matters related to this issue. Among others, see e.g., *In the Matter of Russell Johns*, 1 CBC 2d 174 (1979), *In Re Midtown Skating Corp.*, 3 B.R. 194 (1980); *In Re Hub of Military Circle, Inc.*, 13 B.R. 288, 4 C.B.C.2d 1368 (Bkrtcy., 1981).

Additionally, neither the legislative history of § 108 nor any of the comments thereto contain any indication that § 108 applies to executory contracts. This Court concludes that if Congress intended to require the debtor in possession in a Chapter 11 case to cure a default in an executory contract within the time frame contained in § 108(b), it could have so provided. Section 108(b) is a general provision as to the extension of time. Section 365 is entitled "Executory Contracts and Unexpired Leases." This appears to be the more specific provision. Where two statutory provisions apply, the more specific will govern. *In Re Rapino*, 11 B.R. 651 (Bkrtcy.,1981).

Further, where one section of the Bankruptcy Code governs an issue, another section will not be interpreted to cause an irreconcilable conflict. *Bevan, supra*, citing *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1961). Section 108(b) cannot be applied herein without causing irreconcilable conflict because § 365 allows for the assumption or rejection of an executory contract at any time before confirmation of the plan and for the curing

of default upon assumption of the contract. The Court finds that § 365 governs the issues involved herein and § 108(b) will not be interpreted to cause an irreconcilable conflict.

## II.

### THE ISSUE OF WHETHER THE SLAG AGREEMENT HAS ALREADY TERMINATED AND, IF NOT, WHETHER THE AUTOMATIC STAY SHOULD BE LIFTED AND THE AGREEMENT TERMINATED BY PRESENT ORDER OF THIS COURT.

Levy asserts that since McLouth failed to cure within the sixty day period provided by the agreement and § 108(b), the contract has been terminated and therefore there are no rights for McLouth to assume or reject. This Court has already found that § 108(b) is inapplicable to this proceeding. The question which remains is whether the agreement terminated by its own terms and, if not, whether this Court should lift the stay and terminate the agreement. If the agreement has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case, then there is nothing left for the trustee to assume or assign. *2 Colliers* ¶¶ 365.02 pp. 365–12, 365–13.

█ The agreement provided that if any default should continue for a period of one month after written notice of default was given by either party then the party giving notice may terminate the agreement by giving an additional one month notice to the defaulting party. Levy sent its default notice on December 2, 1981. McLouth filed for reorganization on December 8, 1981, obtaining the order for relief and thereby invoking the automatic stay provisions of § 362. Levy was unable to terminate the agreement according to the terms therein. The agreement has not, therefore, terminated by its own provisions.

Levy, in the alternative, would like to lift the automatic stay and terminate the Slag Agreement. The case law cited by Levy in support of its position is unpersuasive. *In*

*Re Nashville White Trucks*, 5 B.R. 112 (Bkrtcy., 1980), involved an agreement which expired by its own provisions during the bankruptcy proceedings of the debtor therein. In the instant case, no such expiration has occurred. The Slag Agreement requires the parties to perform an affirmative act before termination. No such requirement could be found in the *Nashville* case. Similarly, *In Re Schokbeton Industries, Inc.*, 466 F.2d 171 (5th Cir. 1972), is distinguishable. As counsel for McLouth points out, this case was decided under the Bankruptcy Act where no stay comparable to that of § 362(a)(3) existed. Additionally, the termination notice. in *Schokbeton* was received by the debtor prior to the trustee involved therein taking any action. The trustee failed to act for a period of four months after the debtor received the termination notice. The agreement was extinguished, for all purposes, which in all probability explains the *Schokbeton* court's reluctance to find the agreement in existence. In the instant case, the agreement has not been terminated because of the stay provisions of the Code.

This Court has determined that the agreement has not been terminated and therefore is property of the debtor's estate. *In Re Adana Mortgage Bankers, Inc.*, 12 B.R. 989 (Bkrtcy.,1980); *In Re Pinellas Motel Partnership*, 2 B.R. 113 (Bkrtcy.,1979).

█ This Court will not lift the stay provisions of the Code and terminate this agreement because McLouth has equity in the agreement and because the weight of the evidence reveals that the agreement is necessary for an effective reorganization, notwithstanding some acknowledged present hardship to Levy. 11 U.S.C. 362(d).

## III.

### THE ISSUE OF TIMING IN ASSUMPTION OR REJECTION OF THE INSTANT EXECUTORY CONTRACT.

█ Section 365(d)(2) of the Code provides:

"(2) In a case under chapter 9, 11, or 13 of this title, the trustee may assume or

reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."

This section is clear and unambiguous. The debtor has until the confirmation of the plan to assume or reject an executory contract unless the Court otherwise orders. Section 1123(b), (c) allows for the assumption or rejection of executory contracts in the provisions of a plan. In determining whether a certain contract should be assumed or rejected, the decision should rest on the business judgment of the debtor. *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co.,* 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959 (1943). Upon assumption of a contract, the debtor thereupon must comply with § 365(b)(1)(A), (B), (C).

Levy contends that McLouth has already determined that the Slag Agreement should be assumed because the agreement is essential to the continued operations of McLouth. If that be the case, McLouth, however, has not yet made known its election and the cases indicate that the debtor is to be given a reasonable time to decide whether to assume or reject an executory contract. *In Re Russell Johns, supra.* Indeed, in *Johns,* six months was not found to be unreasonable. This Court finds that McLouth, in the considered exercise of its business judgment, needs a reasonable time to determine whether the Slag Agreement should be assumed and what impact and result its election will have on the formulation of a plan.

The Court is not unmindful of the claim by Levy that to allow McLouth this time is not equitable because the default herein amounts to an interest free loan. Therefore, pursuant to § 365(d)(2), this Court orders McLouth to assume or reject the Slag Agreement by 5:00 p. m. on March 29, 1982. Of course, any assumption of the agreement

means McLouth will be compelled to comply with the provisions of 365(b)(1)(A), (B), (C).

The motion is DENIED.