**In re ERA CENTRAL REGIONAL SERVICES, INC., Debtor.**

**ELECTRONIC REALTY ASSOCIATES, INC., Plaintiff,**

**v.**

**ERA CENTRAL REGIONAL SERVICES, INC., Defendant.**

**Bankruptcy No. 283–00587.**

United States Bankruptcy Court, C.D. Illinois.

March 28, 1984.

Joseph Pavia, Urbana, Ill., for debtor/defendant.

Edward M. Dolson, Dietrich, Davis, Dicus, Rowlands & Schmitt, Kansas City, Mo., William L. Garrison, Danville, Ill., for plaintiff.

## ORDER

LARRY LESSEN, Bankruptcy Judge.

This matter comes before the court on the Complaint For Determination That The Automatic Stay Does Not Apply To Termination of Contracts, Or, In The Alternative, For Relief From The Automatic Stay and on the Motion To Require Rejection of Executory Contract, Or, To Set Time Within Which Debtor Must Assume or Reject Executory Contract filed by plaintiff, Electronic Realty Associates, Inc., (hereinafter referred to as "ERA"). The issues in these matters involve whether ERA, the franchisor, has terminated its franchise agree-ment with its franchisee, ERA Central Regional Services, Inc., (hereinafter referred to as "CRS"), and if the franchise agreement was not terminated, whether CRS is able to cure contractual defaults and is able to provide adequate protection of future performance. The court has considered the evidence presented at hearings, the pleadings, and the arguments of counsel and propounds the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On October 29, 1981, ERA and CRS entered into a Service Broker Representative Agreement (hereinafter referred to as "Agreement"), wherein ERA granted to CRS the right to use ERA trademarks and designs. ERA granted to CRS the exclusive right within the "Cincinnati-Dayton" area to promote the sale of ERA memberships to brokers. This agreement also provided amongst other things, that CRS was to meet certain sales performance standards and to conduct various programs for brokers within CRS's exclusive area. The court finds that CRS failed to meet its sales performance standards and that it failed to adequately conduct appropriate promotion programs for member brokers.

2. On April 23, 1979 ERA executed a Service Broker Representation Agreement with Jim R. Groves, an officer of CRS. This agreement set forth sales performance standards and required Groves to conduct programs for member brokers. ERA granted Groves exclusive rights to market ERA memberships for the "Peoria and Springfield-Decatur-Champaign", Illinois areas. This agreement required that ERA approve any assignments of the agreement by Groves. Groves assigned the agreement to CRS without ERA's approval. The court finds that Groves failed to meet its sales performance standards, failed to adequately conduct appropriate promotion programs for member brokers, and assigned the agreement to CRS without ERA's approval.[1]

---

1. Although ERA never formally approved Groves's assignment of the agreement to CRS

the court finds that ERA was aware of the assignment and, with this knowledge, regularly

3. Both of the Agreements contained the following termination provision:

ERA may terminate this Agreement only for good cause shown upon giving Representative [CRS] ninety (90) days prior written notice of the proposed termination and opportunity during said period to rectify or satisfy the matter giving rise to said good cause. . . .

The agreement then defined good cause to include any breach of any terms or conditions including, but not limited to, a breach of performance standards.

4. On April 8, 1983 ERA sent by certified mail to Mr. Jim Groves and to CRS notice that their respective agreements were "terminated 90 days from the date hereof for good cause. You shall have an opportunity during this 90-day notice period to rectify and satisfy the matters giving rise to said good cause." Good cause for CRS included: a) CRS's failure to forward to Audrey S. Ziegler all fees paid to CRS by ERA resulting from a default to Ms. Ziegler; b) the assignment of the agreement without ERA's approval; c) CRS's failure to comply with performance standards; d) CRS's insolvency; and e) CRS's breach of the terms and conditions of the agreement. Good cause for Groves included: a) Groves's voluntary abandonment of the Service Broker Business; and b, c, d and e as stated above. These notices further stated, "The termination of your Service Broker Representative Agreement will be effective 90 days from the date hereof unless the aforesaid matters giving rise to good cause for termination are cured and satisfied during this 90-day period."

5. On July 6, 1983, 1 day before ERA's notice that the agreements would be termi-

nated if the defaults were not cured, CRS filed its petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code.

CONCLUSIONS OF LAW

1. Termination of contracts

ERA claims that its Agreement with CRS terminated either on April 8, 1983, when it sent notice of termination to CRS, or on July 7, 1983, 90 days after the notice to CRS. With respect to the April 8, 1983 date ERA argues that as of that date the Agreements were effectively terminated. The latter date of July 7, 1983 is based on ERA's assertion that after April 8, 1983 debtor's only right under the Agreements was to operate for 90 days, and that, irrespective of debtor's bankruptcy, the Agreements were defunct on the 90th day (July 7, 1983). CRS argues that on April 8, 1983 ERA gave notice to CRS that it had 90 days to cure contractual defaults and that its bankruptcy, filed on the 89th day of the cure period, invoked the automatic stay in bankruptcy, 11 U.S.C.A. § 362, and prohibits the Agreement from terminating without court approval. The court agrees with the position of CRS.

The automatic stay in bankruptcy operates to prohibit all entities from pursuing any act to obtain possession of property of the bankruptcy estate, 11 U.S.C.A. § 362(a)(3), and franchise agreements can be property of the bankruptcy estate. See *In the Matter of R.S. Pinellas Motel Partnership*, 2 B.R. 113, 118 (Bkrtcy.M.D.Fla. 1979). Generally, a franchise agreement is property of the bankruptcy estate if it has not been effectively terminated prior to debtor's bankruptcy.[2] In considering whether a franchise agreement was effectively terminated prior to bankruptcy,

conducted business with CRS for the Illinois area. The court will use "Groves" and "CRS" interchangeably with respect to the Illinois areas.

2. *Matter of R.S. Pinellas Motel Partnership*, 2 B.R. 113, 116–7 (Bkrtcy.M.D.Fla.1979). *Schokebeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171, 176–7 (5th Cir.1972). *Matter of McLouth Steel Corp.*, 20 B.R. 688, 691 (Bkrtcy.E.D.Mich.1982). *Matter of Moody*, 31 B.R. 216 (Bkrtcy.W.D.Wis.1983). *Matter of Var-*

*isco*, 16 B.R. 634 (Bkrtcy.M.D.Fla.1981). *Matter of Benrus Watch Co., Inc.*, 13 B.R. 331 (Bkrtcy.S.D.N.Y.1981). *In re Beck*, 5 B.R. 169 (Bkrtcy.D.Ha.1980). *Matter of New Media Irjax, Inc.*, 19 B.R. 199 (Bkrtcy.M.D.Fla.1982). *In re Bronx-Westchester Mack Corp.*, 4 B.R. 730 (Bkrtcy.S.D.N.Y.1980); 20 B.R. 139 (Bkrtcy.S.D.N.Y.1982). *In re Trigg*, 630 F.2d 1370 (10th Cir.1980). See also Quittner, Franchises in Bankruptcy: Termination, Rejection, and Assumption, 89 Comm. L.J. 83 (1983).

courts consider whether the debtor was granted an opportunity to cure defaults. *In re Varisco,* 16 B.R. 634, 638 (Bkrtcy.M.D.Fla.1981). Where a franchisee is granted time to cure defaults and the franchisee files its bankruptcy petition prior to the time the cure period expires, the franchise agreement is not terminated and is property of the estate. *Id.*

The notices sent by ERA to Groves and to CRS are critical to determine whether ERA effectively terminated the contracts. The notices, dated April 8, 1983, stated,

Please be advised that your Service Broker Representative Agreement by and between Electronic Realty Associates, Inc., originally dated April 23, 1979, pertaining to certain Central Illinois counties [and to the Cincinnati-Dayton area], is hereby terminated 90 days from the date hereof for good cause. *You shall have an opportunity during this 90 day notice period to rectify and satisfy the matters giving rise to said good cause....* The termination of your Service Broker Representative Agreement will be effective 90 days from the date hereof *unless the aforesaid matters giving rise to good cause for termination are cured and satisfied during this 90 day period.* (emphasis added)

■ Viewing the notice provisions in their entirety ERA granted to CRS 90 days to "rectify and satisfy" or to "cure" its defaults. The court concludes that the agreements could not terminate until after the cure period expired. In this case debtor filed its petition in bankruptcy one day prior to the expiration of the cure period, and, as such, the Agreements were not terminated when debtor filed for bankruptcy. Debtor's Agreements are property of the estate, and, as property of the estate, the Agreements are subject to the automatic stay in bankruptcy. The automatic stay prohibited the Agreements from terminating without court approval. *Matter of R.S. Pinellas Motel Partnership,* 2 B.R. 113, 117–9 (Bkrtcy.M.D.Fla.1979).

**2. Effect of 11 U.S.C.A. § 108(b)**

■ In the event that the Agreements were not effectively terminated on April 8, 1983 or on July 7, 1983, ERA argues that Section 108(b) mandates that the Agreements terminated no later than 60 days after Debtor's bankruptcy (September 4, 1983). Section 108(b) states,

[I]f applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) 60 days after the order for relief.

The court concludes that § 108(b) must be read in conjunction with § 105, § 362 and § 365 of the Bankruptcy Code. Section 105(a) states that the bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. Section 362(a)(3) provides that a petition in bankruptcy operates as a stay, applicable to all entities, prohibiting any act to obtain possession of property of the estate or property from the estate. Lastly, § 365 provides that subject to court approval and under certain circumstances the trustee in bankruptcy may assume and cure a defaulted executory contract. The court concludes that the specific provisions of § 362 and § 365, buttressed by § 105, prevail, to the extent there is conflict, over the general § 108 provision. *In re R.S. Pinellas Motel Partnership,* at 119. *In the Matter of McLouth Steel Corp.,* 20 B.R. 688, 690–1 (Bkrtcy.E.D.Mich.1982). The court concludes, therefore, that § 108(b) should not be applied to the instant agreements and

that the Agreements did not terminate 60 days after debtor's petition.

### 3. Assuming the contract and curing defaults

 In order for CRS to assume the agreements it must cure its defaults and provide adequate assurance that it will perform the agreements in the future.[3] 11 U.S.C.A. § 365. ERA argues that the Agreements are personal service contracts which can not be assumed. The court notes that ERA contracted with CRS, a corporation, for the Cincinnati-Dayton territories, and through its actions it assented to Groves's assignment of the Illinois area to CRS. ERA's course of conduct with CRS, a corporation, indicates that the Agreements are not personal service contracts. These Agreements may be assumed by CRS.

ERA further argues that it is impossible for CRS to cure its defaults since some of the defaults involve past events which are incurable. For instance, ERA claims that CRS's failure to meet past performance standards and its failure to sponsor sufficient promotion programs can never be cured.

 The court is mindful that history can not be relived and that CRS's past failure to meet standards or to promote cannot now be met. This truism, however, does not preclude per se CRS from curing defaults. See *R.S. Pinellas Motel Partnership*, at 119. Money damages may be appropriate to cure CRS's past defaults. The court concludes that CRS must provide a Plan pursuant to 11 U.S.C.A. § 1123 which will provide a cure for its past defaults and which will adequately provide adequate assurances of future performances. *In re Phelia Associates, Inc.*, 17 B.R. 66 (Bkrtcy.W.D.Ky.1981). CRS shall promulgate a Plan to the court within 45 days. If the Plan is not forthcoming within 45 days the court will dismiss this case or convert it to a Chapter 7 proceeding or

---

**3.** As debtor in possession, CRS possesses the rights of a trustee in bankruptcy. 11 U.S.C.A.

provide any appropriate relief. *In re Phelia Associates, Inc.*, 26 B.R. 235 (Bkrtcy.W. D.Ky.1982).

IT IS THEREFORE ORDERED that the automatic stay in bankruptcy, 11 U.S.C.A. § 362, applies to the Agreements between ERA and CRS.

IT IS FURTHER ORDERED that CRS shall provide a Plan of Reorganization pursuant to 11 U.S.C.A. § 1123 within 45 days, and said Plan shall cure all defaults in the Agreements and shall provide adequate assurance of future performance.