**In re ROUND HILL TRAVEL, INC., a Nevada Corporation, Debtor.**

**Bankruptcy No. R–84–00116.**

United States Bankruptcy Court,
D. Nevada.

Sept. 6, 1985.

Geoffrey L. Giles, Reno, Nev., for debtor.

Paul D. Bancroft, Reno, Nev., for Air Traffic Conference of America (ATC).

## ORDER

ROBERT C. JONES, Bankruptcy Judge.

The debtor, Round Hill Travel, filed its petition for relief under Chapter 11 of the Bankruptcy Code[1] on February 27, 1984. Round Hill is a travel agent which has been operating pursuant to an Agreement with the Air Traffic Conference of America (ATC) since at least August of 1981. Beginning in January of 1984, the debtor began to experience financial difficulties, and several drafts to ATC were dishonored. This constituted a breach of the ATC Passenger Sales Agency Agreement, under which ATC then acquired the right to terminate the agreement and recover various items of property from the agent, if the default was not cured within thirty days. The bankruptcy petition was filed before the expiration of the thirty day cure period for the first default.

---

1. "Bankruptcy Code" and "Code" refers to the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 to 151326. "Bankruptcy Act" and "Act" refers to the former federal law, 11 U.S.C. §§ 1 to 1103 (repealed 1979).

On May 8, 1984, ATC filed a pleading entitled Motion to Lift the Automatic Stay, Recover Property Held in Trust, and to Declare the ATC Passenger Sales Agency Agreement Terminated. By Order of this Court dated May 22, 1984, the debtor was allowed to remain in operation under the ATC Agreement, on the condition that the debtor immediately cure all post-petition defaults, and also secure a letter of credit for $25,000.00 in favor of ATC. At a hearing held June 7, 1984, the parties stipulated that the debtor had complied with the May 22 Order. The Court then ordered the automatic stay to remain in effect, pending its decision regarding the debtor's right to assume the ATC Agreement pursuant to Bankruptcy Code § 365.

ATC contends that Code § 108(b) governs the time period within which the debtor must cure its defaults. Section § 108(b) provides:

(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) 60 days after the order for relief.

It is ATC's position that under § 108(b) the debtor had only until approximately April 20, 1984—60 days following the filing of its petition—to cure its defaults. The debtor having failed to do so, the ATC Agreement lapsed "by its own terms", and Round Hill no longer has any right to assume the contract under § 365, as there is no longer any executory contract in existence to assume. Hence, the creditor argues, the stay of § 362 should be lifted so that ATC may officially terminate the Agreement, and recover its travel documents, airline identification plates, and other property used by Round Hill under the Agreement.

Round Hill argues that § 365, rather than § 108(b), controls the time for assumption of an executory contract and the cure of defaults. Section 365(d)(2) provides, *inter alia*, that in a case under Chapter 11, the debtor may assume or reject any executory contract at any time before confirmation of a plan, although the court, on request of the other party to the contract, may order that the debtor determine whether to assume or reject within a specified period. Section 365(b)(1) provides, *inter alia*, that if there has been a default in an executory contract, it may not be assumed unless, *at the time of assumption,* the debtor cures the default and provides assurances of future performance. Therefore, under § 365, the debtor could have much longer than 60 days to cure defaults under executory contracts, unless the creditor takes affirmative steps to seek special protection under § 365(d)(2).

Those courts which have directly addressed the relationship between § 108(b) and § 365 have concluded that § 365 governs the debtor's right to assume executory contracts and hence the time for cure of defaults. *See e.g. Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1215–1216 (7th Cir.), *cert. denied* —— U.S. ——, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *Edwin C. Levy, Co. v. McLouth Steel Corp.,* 20 B.R. 688 (Bankr. E.D.Mich.1982). These courts reason that § 365 is the more specific, hence the controlling, provision, as it expressly addresses the cure of defaults in executory contracts, while § 108(b) is merely a general provision as to extension of time. Moreover, as the *Moody* court noted:

The purpose behind section 108(b) is to permit the debtor an extension of time for doing certain acts necessary to preserve his rights. It would be anomalous to apply it to restrict debtors' rights, as [the creditor] would have us do here. Applying section 108(b) here would force

debtors to decide whether to cure long before they must decide whether to assume or reject the contract and long before they know whether any reorganization plan will be confirmed. Finally, the purpose behind chapter 11 is "to permit successful rehabilitation of debtors" and "to prevent a debtor from going into liquidation." *NLRB v. Bildisco & Bildisco*, [465] U.S. [513], 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984). Debtors must be permitted a certain amount of flexibility in determining whether to assume or to reject a contract. Specific provisions of the Code should be interpreted with this goal in mind. To interpret the Code so as to minimize flexibility and rush the debtor into what may be an improvident decision does not further the purposes of the reorganization provisions.

734 F.2d at 1216. This Court concludes, therefore, that while § 108(b) gives the debtor a *minimum* of 60 days to perform certain acts, § 365 specifically enlarges this period for the cure of defaults in executory contracts in a case under Chapter 11.

 ATC would like to characterize the Agreement as one which expired "by its own terms" after the filing of the petition. Although it is generally true that a bankruptcy filing cannot "toll the mere running of time under a contract", nor give the debtor greater rights in a contract, *see Moody v. Amoco*, 734 F.2d at 1213, courts distinguish between the expiration of a contract according to its own terms, and termination of a contract for default. *See Lauderdale Motorcar Corp. v. Rolls-Royce Motors, Inc.*, 35 B.R. 544, 548 n. 2 (Bankr.S.D. Fla.1983). Where the latter is involved, the Code certainly does operate to modify rights and extend time periods. In this regard it is instructive to look closely at the two types of agreements considered by the *Moody* court. While the court held that § 365 governed the assumption and cure of defaults in the debtors' jobbership contract, as discussed above, the court reached a different conclusion as to the dealership contracts. *See* 734 F.2d at 1212–1213. These latter agreements gave the debtors

no right to cure once termination notices were mailed pre-petition. The court held that since the terminations were complete and not subject to reversal prior to the bankruptcy filing, the Code provided no means of extending the contracts, even though the terminations were not to be effective until after the filing. It is therefore crucial for the operation of § 365, that on the date of the bankruptcy filing, the debtor still had a right to cure defaults under the agreement. This was true for the jobbership contrac considered in *Moody*, and is the case here, as the 30 day period for Round Hill to cure its first default under the ATC Agreement had not yet expired on February 27, 1984, the date of the petition. In support of its argument, ATC cites a line of cases which held that § 108(b) controls over the automatic stay of § 362. *See e.g. Johnson v. First National Bank of Montevideo*, 719 F.2d 270 (8th Cir.1983) *cert. denied*, — U.S. —, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Westergaard v. Cucumber Creek Development, Inc.*, 33 B.R. 820 (D.Colo.1983). Reliance on these cases is misplaced, as these courts did not address the debtor's rights under § 365. *See also Santa Fe Development and Mortgage Corp. v. McCormack*, 16 B.R. 165 (Bankr. 9th Cir.1981).

ATC also cites *Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171 (5th Cir.1972) for the proposition that a creditor's right to terminate an agreement for the debtor's failure to meet its contractual obligations survives the filing of a bankruptcy petition. *Schokbeton* held that in assuming an executory contract, the debtor must cure defaults pursuant to the agreement, and the court could not prevent the post-petition termination of a contract for debtor's failure to so cure. However, *Schokbeton* was an Act case which now has limited application under the Code. The Bankruptcy Act contained no provision comparable to the automatic stay of Code § 362(a)(3), and Code § 365 changes prior law substantially. Therefore, modern courts do not apply *Schokbeton* in considering the debtor's rights under

**810**

§ 365. *See e.g. Webster Clothes, Inc.,* 36 B.R. 260, 263–264 (Bankr.D.Md.1984); *Executive Square Office Building v. O'Connor and Associates, Inc.,* 19 B.R. 143, 146, 148 (Bankr.N.D.Fla.1981); *Varisco v. Oroweat Food Co.,* 16 B.R. 634, 637 (Bankr.M.D.Fla.1981). *See also McLouth Steel,* 20 B.R. at 691.

Finally, ATC appears to contend that § 365 does not apply here at all, arguing that the executory duties of the Agreement ended pre-petition, and the debtor had only a right to *reinstate* the executory duties by curing defaults within 30 days. The Court is not persuaded by this characterization. At the time of the bankruptcy filing, the ATC Agreement had not yet been fully and irrevocably terminated, as Round Hill still had the right to cure its defaults and revive the contract. Therefore, the debtor had, and still has, sufficient interest in the contract to assume it pursuant to § 365. See *Bistrian v. Easthampton Sand & Gravel Co.,* 25 B.R. 193, 197 (Bankr.E.D.N.Y.1982); *Varisco,* 16 B.R. at 638. The concept of "cure" used throughout the Bankruptcy Code "means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified...." *Pierro v. Taddeo,* 685 F.2d 24, 26 (2nd Cir.1982). The Agreement on the date of the filing can best be characterized as an executory contract in default, and hence the debtor has its full rights under § 365 to assume and cure. Accordingly,

IT IS HEREBY ORDERED, that the Motion of Air Traffic Conference of America is denied.