**In re EDWIN M. LIPSCOMB FARMS, INC., Debtor.**

**EDWIN M. LIPSCOMB FARMS, INC., Plaintiff,**

v.

**MICHIGAN MILLERS MUTUAL INSURANCE COMPANY, Defendant.**

**Bankruptcy No. 88–02940–S–1–11. Adv. No. 88–0602–S–1–11.**

United States Bankruptcy Court, W.D. Missouri, S.D.

Sept. 13, 1988.

James R. Doran, Springfield, Mo., for debtor/plaintiff.

Dennis R. Dow, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Debtor filed its petition for reorganization on July 1, 1988. Debtor is engaged in the business of warehousing, storing and trading in grain and agricultural products. By statute, each such dealer or warehouseman must procure and file with the State of Missouri two bonds. The first of these is a "grain dealer's bond" and the second is a "grain warehouseman's bond". Michigan Millers Mutual Insurance Company, hereinafter defendant, was the issuer of debtor's two bonds. The statutes governing the bonds provide that same cannot be cancelled without 90 days prior written notice to the state authorities in Jefferson City with a copy to dealer. Defendant sent the 90 day cancellation notice to the state and to debtor on June 20, 1988 as to the "grain dealer's bond" and on June 17, 1988 as to the "grain warehouseman's bond". Those notices were received June 24, 1988 and June 20, 1988, respectively by the state, and the 90 day clock was running.

Debtor filed this adversary action to enjoin defendant from cancelling the two bonds. Debtor alleged, inter alia, that said bonds were essential to debtor's reorganization and that they were cancelled because debtor had advised the defendant it might be necessary for debtor to reorganize under Chapter 11. At the hearing it was conceded that debtor's first allegation (or at least that two bonds must be in place) was correct. There was substantial dispute over debtor's second allegation. It was at least equally clear that debtor was obligated to supply defendant with financial information each year and had failed to do so as it was that defendant knew of debtor's impending Chapter 11. It was also clear that defendant had repeatedly requested financial information from debtor and has not yet received same. For reasons set forth further in this opinion, the basis or rationale for the cancellation is not viewed as controlling, although if it were, debtor would not have established to the Court's satisfaction that the possibly impending Chapter 11 filing was either the sole or primary reason for the cancellation.

Mo.R.S. Section 276.426 sets out the bond requirements and steps for cancellation. Subsection (7) and (8) provide that the surety shall send notice to the state of the cancellation, effective 90 days in the future. The state suspends the dealer's license 30 days after receipt of the notice and cancels the dealer's license 60 days after receipt of the notice if the dealer does

not provide a new bond within one of the two enumerated time frames. Of course, a dealer may not operate without a license. The question then becomes: Should this Court issue an injunction against defendant requiring it to maintain the two bonds in place?

The cases cited by the debtor indicate that opposite results have occurred in such cases, but careful reading tends to explain the claimed divergence. While *In re Cahokia Downs, Inc.*, 5 B.R. 529 (Bkrtcy.S.D.Ill. 1980), *In re R.O.A.M., Inc.*, 15 B.R. 616 (Bkrtcy.D.Nev.1981) and *In re Deerfield Grain Co.*, 85–0324–SW–11 slip opinion (Bkrtcy.W.D.Mo.1985), are cited as calling for injunctive relief, the facts in each case differ widely from the facts at hand. For example, in *Deerfield*, the purported cancellation was issued on June 13, 1985, some 51 days after the Chapter 11 was filed. It is a far different matter to enjoin the issuance of a post filing cancellation than to require a surety who has cancelled pre filing to resume the burden of bonding a principal who admittedly is on less than solid financial footing.

 While the Court has found no cases involving pre filing bond cancellations in cases involving grain dealers, there are numerous cases that validate legitimate pre filing cancellation of dealerships, *Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir. 1984), franchises, *In re Lauderdale Motorcar Corp.*, 35 B.R. 544 (Bkrtcy.S.D.Fla. 1983), or other types of continuing but contractually cancellable contracts, *In re New Media Irjax, Inc.*, 19 B.R. 199 (Bkrtcy.M.D. Fla.1982) and *In re Hospitality Associates, Inc.*, 6 B.R. 778 (Bkrtcy.D.Oregon 1980). The rule demonstrated in such cases is that if the agreement is cancellable by the terms contained therein and one of the parties properly initiates such cancellation pre petition and nothing more remains to be done except wait for the passage of time, the mere filing of a petition for relief neither halts nor stays the cancellation. Conversely, if some further act must be done by the cancelling party, the automatic stay may well prevent the accomplishment of the necessary act post petition. In this case nothing further is required to be done by surety. As to the effect of the automatic stay on the tolling or extension of a statutory period of redemption see *Johnson v. First National Bank*, 719 F.2d 270 (8th Cir.1983).

The Court sees no reason why statutory bonds should be treated in any different fashion. Debtor's complaint for injunctive relief is DENIED.

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.