**In re MASTERWORKS, INC., Debtor.**

No. 5–88–00540.

United States Bankruptcy Court,
D. Connecticut.

May 31, 1989.

S. Heath, New Haven, Conn., for U.S. trustee/movant.

Stephen Sakonchick, II, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for Scandia Down Corp.

Byron Paul Yost, Hogan, Evans, Baldwin, Rini, Yost & Mednick, P.C., Bridgeport, Conn., for debtor/respondent.

## MEMORANDUM AND ORDER ON MOTION TO CONVERT OR DISMISS CHAPTER 11 CASE

ALAN H.W. SHIFF, Bankruptcy Judge.

The United States Trustee, joined by Scandia Down Corporation, moves pursuant to Bankruptcy Code § 1112(b)(2) [1] for

---

**1.** Code § 1112(b) provides in part:

Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a

hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter,

an order converting this case to a case under chapter 7 or, in the alternative, dismissing the case. While a number of issues have been raised, the sole question decided here is whether the debtor's franchise agreement (Agreement) with Scandia remains executory despite Scandia's pre-petition notice of termination for failure to make required royalty payments. If the Agreement is not executory, it may not be assumed and the debtor's "prospects for prompt rehabilitation" will fade. *See A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.),* 749 F.2d 146, 151 (2d Cir.1984), *cert. denied,* 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985). *Cf. United Savings Assoc. of Tex. v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed. 2d 740 (1988) ("[T]here must be 'a reasonable possibility of a successful reorganization within a reasonable time.' "). Under those circumstances conversion would be warranted.

## I.

On August 23, 1984, the debtor entered into the Agreement with Scandia. Under the Agreement, the debtor was to operate a retail outlet store for Scandia merchandise under the trade name "Scandia Down Shop". Section 4.01(b) of the Agreement provided for monthly royalty payments of four percent of the debtor's gross revenues.[2] Section 14.01(b) gave Scandia the right to terminate the Agreement upon notice if the debtor failed to make the required payments and did not cure that default within the notice period.[3] Connecticut General Statutes § 42–133f(a), which preempts the notice period in the Agreement, requires, *inter alia*, a sixty day notice period prior to termination of a franchise agreement.[4] *See* Conn.Gen.Stat.Ann. 42–133f(f) (West 1987) ("Any waiver of the rights of a franchisee under sections 42–133f or 42–133g which is contained in any franchise agreement entered into or amended on or after June 12, 1975, shall be void.").

The debtor failed to make royalty payments due in March and April, 1988, and by a letter dated May 26, 1988, Scandia gave the debtor the required sixty days notice of termination. On June 30, 1988, the debtor filed a petition under chapter 11 of the Bankruptcy Code.

whichever is in the best interest of creditors and the estate, for cause, including—
. . . .
(2) inability to effectuate a plan. . . .

2. Section 4.01 of the agreement provided in relevant part:

In consideration of the execution of this Agreement by Franchisor and the services to be performed by Franchisor hereunder, Franchisee hereby agrees to pay to Franchisor:
. . . .
(b) As a continuing royalty, a sum equal to four (4%) percent of all gross revenues (as hereinafter defined), made in, upon or from the Franchised Business at the Franchised Location. The Franchisee shall report all gross revenues and pay the continuing royalty for the previous month on or before the tenth (10th) day of each month during the term of this Agreement, or any extension or renewal hereof.

3. Section 14.01 of the agreement provided in part:

Franchisor shall have the right to terminate this Agreement only for "Cause". "Cause" is hereby defined as a material breach of this Agreement or any other contract or agreement between Franchisee and Franchisor, including, but not limited to, other Franchise Agreements. Franchisor shall exercise its right to terminate this Agreement upon notice to Franchisee upon the following circumstances and in the following manner:
. . . .
(b) With respect to any default by Franchisee of his obligation to pay any sums due Franchisor under his Agreement, Franchisor may terminate this Agreement upon not less than seven (7) days prior written notice of such default. If Franchisee shall cure said default prior to the end of such period, Franchisor's said right to terminate shall cease.

4. Connecticut General Statutes § 42–133f(a) provides in part:

No franchisor shall, directly, or through any officer, agent or employee, terminate, cancel or fail to renew a franchise, except for good cause which shall include, but not be limited to the franchisee's refusal or failure to comply substantially with any material and reasonable obligation of the franchise agreement or for the reasons stated in subsection (e) of this section. The franchisor shall give the franchisee written notice of such termination, cancellation or intent not to renew, at least sixty days in advance to such termination, cancellation or failure to renew with the cause stated thereon. . . .

## II.

At the outset, it must be determined whether the Agreement was still executory at the commencement of this case and therefore assumable under Bankruptcy Code § 365.[5] Scandia contends that since all that remained to complete the termination of the Agreement was the passage of time, it had been effectively terminated and was no longer executory when the petition was filed. The authority relied upon by Scandia, however, is distinguishable in that in each case cited there was no right to cure under the contract or applicable law when the petition was filed. *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1212–14 (7th Cir.1984), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *Edwin M. Lipscomb Farms, Inc. v. Michigan Millers Mut. Ins. Co. (In re Edwin M. Lipscomb Farms, Inc.)*, 90 B.R. 422 (Bankr.W.D.Mo.1988); *In re Crabb*, 48 B.R. 165 (Bankr.D.Mass.1985); *D.C. Films, Inc. v. Best Film & Video Corp. (In re Best Film & Video Corp.)*, 46 B.R. 861 (Bankr.E.D.N.Y.1985); *Lauderdale Motorcar Corp. v. Rolls–Royce Motors, Inc. (Matter of Lauderdale Motorcar Corp.)*, 35 B.R. 544 (Bankr.S.D.Fla.1983); *Shell Oil Co. v. Anne Cara Oil Co., Inc. (In re Anne Cara Oil Co., Inc.)*, 32 B.R. 643 (Bankr.D.Mass.1983); *New Media Irjax, Inc. v. DC Comics, Inc. (Matter of New Media Irjax, Inc.)*, 19 B.R. 199 (Bankr.M.D. Fla.1982); *Matter of Benrus Watch Co., Inc.*, 13 B.R. 331 (Bankr.S.D.N.Y.1981). In sharp contrast, this debtor's right to cure under the Agreement as modified by state law had not elapsed when the petition was filed, and the Agreement was therefore still executory.[6] *See Moody, supra*, 734 F.2d at 1216; *In re Round Hill Travel, Inc.*, 52 B.R. 807, 810 (Bankr.D.Nev.1985); *Electronic Realty Assoc., Inc. v. ERA Central Regional Serv., Inc. (In re ERA Central Regional Serv., Inc.)*, 39 B.R. 738, 741 (Bankr.C.D.Ill.1984).

The question evolves, how much time did the debtor have to cure the default after the commencement of the case. Under a § 108(b) [7] analysis, employed by some courts, the debtor's right to cure and therefore its right to assume would have expired sixty days after the filing of the petition. *See, e.g., Counties Contracting and Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1059–61 (3rd Cir.1988). I conclude, however, in accord with what I

5. Code § 365 provides in pertinent part:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

. . . .

(d)(2) In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

6. The contingent nature of an obligation does not prevent a contract from being treated as executory. *See Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1046 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *In re G–N Partners*, 48 B.R. 462, 465 (Bankr.D.Minn.1985). If the debtor were to exercise its right to cure, absent any other ground for termination both Scandia and the debtor would be obligated to perform under the Agreement.

7. Code § 108(b) provides:

Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

find to be more persuasive authority from the Seventh Circuit, that § 365, which gives debtors the right to cure executory contracts at any time before confirmation, governs. *Moody, supra,* 734 F.2d at 1215–16. *See also In re Henke,* 84 B.R. 693, 697 (Bankr.D.Mont.1988); *In re Round Hill Travel, Inc., supra,* 52 B.R. at 809.

First, as a rule of statutory construction, it is observed that where two provisions apply, the more specific governs. *Edwin C. Levy Co., Inc. v. McLouth Steel Corp. (Matter of McLouth Steel Corp.),* 20 B.R. 688, 690 (Bankr.E.D.Mich.1982); *International Playtex, Inc. v. Rapino (In re Rapino),* 11 B.R. 651, 657 (Bankr.E.D.N.Y.1981). Applying that analysis, § 365(d)(2), which specifically governs the cure of defaults in executory contracts, should govern rather than § 108(b), which generally governs post-petition extensions of time to cure defaults. *Moody, supra,* 734 F.2d at 1215; *Matter of Dunes Casino Hotel,* 63 B.R. 939, 949 n. 4 (D.N.J.1986); *In re Memphis–Friday's Assoc.,* 88 B.R. 830, 839 (Bankr. W.D.Tenn.1988); *In re Round Hill Travel, Inc., supra,* 52 B.R. at 808–09; *Edwin C. Levy Co., Inc., supra,* 20 B.R. at 690.

That result is consistent with the rationale underlying a debtor's right under § 365 to assume executory contracts at any time before the confirmation of a plan. One of the principal objectives of bankruptcy policy is to provide honest debtors with a reasonable opportunity for a fresh economic start. *See NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984). Toward that end, chapter 11 debtors are given a wide variety of advantages to facilitate their rehabilitation efforts. For example, debtors are permitted to remain in possession and manage their property, *see* 11 U.S.C. §§ 1107, 1108; they are given a 120 day exclusive period to file a plan, which for cause may be extended, *see* 11 U.S.C. § 1121(b), (d); impairment of a class of claims is defined, with some exceptions, to exclude accelerated claims, *see* 11 U.S.C. § 1124(2); holders of unimpaired claims are deemed to have accepted the plan, *see* 11 U.S.C. § 1126(f); and confirmation of a plan is allowed over the objection of dissenting classes of claims or interests if

certain conditions are met. That policy is better served by the flexible time constraints permitted by § 365(d)(2) than by the rigid time permitted by § 108(b). *See Moody, supra,* 734 F.2d at 1216 ("To interpret the Code so as to minimize flexibility and rush the debtor into what may be an improvident decision does not further the purposes of the reorganization provisions.").

Scandia's objection to the applicability of § 365(d)(2) is muted by the fact that that subsection permits any party to seek an order that the debtor determine whether to assume or reject the contract within a specified time. Scandia has not sought any such order, and is therefore in part responsible for any uncertainty as to the status of the franchise.

### III.

I conclude that the intervention of bankruptcy within the statutory cure period preserved the executory nature of the Agreement notwithstanding Scandia's pre-petition notice of termination for failure to make required royalty payments, that the United States Trustee's motion to dismiss or convert on that ground is DENIED, and

IT IS SO ORDERED.